******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE AUSTIN C.*
## (AC 48481)

Cradle, C. J., and Westbrook and Bishop, Js.

### *Syllabus*

The respondent mother appealed from the trial court's judgment terminating her parental rights with respect to her minor child. The mother claimed, inter alia, that the court improperly determined that the Department of Children and Families made reasonable efforts to reunify her with her child. *Held*:

The trial court reasonably could have concluded, on the basis of the evidence presented at trial, that the department made reasonable efforts to reunify the respondent mother with the child, as the department provided the mother with supervised visitation and therapeutic family time, made referrals for parenting education, and made reasonable efforts to engage the mother in mental health and substance abuse treatments, and the mother repeatedly refused to engage with the department by, inter alia, refusing to sign releases that would have allowed the department to communicate with her health care providers and to make referrals for specific services.

Argued September 2—officially released October 22, 2025**

### *Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Bridgeport, Juvenile Matters, where the case was tried to the court, *Skyers, J.*; judgment terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed*.

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent mother).

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

** October 22, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Nisa Khan*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Jessica Morse*, assistant attorney general, for the appellee (petitioner).

*Opinion*

CRADLE, C. J. The respondent mother, Fatima C., appeals from the judgment of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her minor child, Austin C. (Austin).[1] On appeal, the respondent claims that the court erred in determining that the Department of Children and Families (department) made reasonable efforts to reunify her with Austin. We disagree and, accordingly, affirm the judgment of the trial court.[2]

The following facts, which the court found by clear and convincing evidence, and procedural history are relevant to this appeal. The department first became involved with Austin on November 22, 2022, just a few days after his premature birth, when it received a report from a medical professional at St. Vincent's Medical

---

[1] The court also terminated the parental rights of the respondent Alvin D., the father of Austin. He has not appealed from the termination of his parental rights. Accordingly, all references to the respondent in this opinion are to Fatima C. only.

[2] The respondent also claims that the court erred in finding that she was unable or unwilling to benefit from the reunification efforts offered by the department. Because we conclude that the court properly found that the department made reasonable efforts to reunify the respondent with Austin, we need not address the respondent's challenge to the court's determination that she was unable or unwilling to benefit from those efforts. See *In re Corey C.*, 198 Conn. App. 41, 66, 232 A.3d 1237 ("[T]he [petitioner] must prove [by clear and convincing evidence] *either* that [the department] has made reasonable efforts to reunify or, *alternatively*, that the parent is unwilling or unable to benefit from the reunification efforts. [General Statutes §] 17a-112 (j) clearly provides that the [petitioner] is not required to prove both circumstances. Rather, either showing is sufficient to satisfy this statutory element." (Emphasis in original; internal quotation marks omitted.)), cert. denied, 335 Conn. 930, 236 A.3d 217 (2020).

Center (St. Vincent's) that the respondent presented as psychotic and did not recognize Austin as her child. The respondent "believed that her child had been switched with another child . . . [and] refused to sign hospital documents relating to the child." The respondent received a mental health evaluation and was admitted to St. Vincent's for psychiatric treatment. The medical providers at St. Vincent's recommended that she attend outpatient mental health treatment upon her release, but the respondent declined.

On December 6, 2022, the petitioner filed a motion for an ex parte order of temporary custody (OTC) and a neglect petition on Austin's behalf. The court, *Maronich, J.*, granted the OTC and ordered preliminary specific steps to facilitate the return of Austin to the respondent that same day. Following a hearing on December 9, 2022, which the respondent did not attend, the court sustained the OTC. After another hearing, on October 26, 2023, the court, *Skyers, J.*, approved a permanency plan of termination of parental rights and adoption. On November 29, 2023, the court, *Maronich, J.*, adjudicated Austin neglected and committed him to the care and custody of the petitioner. The court also ordered final specific steps addressing, among other things, the respondent's issues with mental health, substance abuse, intimate partner violence (IPV), parenting skills, housing, and employment. The respondent further agreed to be more communicative with the department by signing releases and providing information. On March 20, 2024, the petitioner filed a petition for the termination of the respondent's parental rights, alleging that the respondent had failed to achieve a sufficient degree of personal rehabilitation pursuant to General Statutes § 17a-112 (j) (3) (B) (i).

On December 19, 2024, following a trial, the court, *Skyers, J.*, issued a memorandum of decision terminating the respondent's parental rights as to Austin. The

court first noted that Austin was born prematurely and has received intensive medical care from birth. As a result of his numerous medical conditions, Austin was assessed to be "medically complex level one" and has "several medical appointments each month with various providers." The trial court then addressed the respondent's history prior to and since the department's initial involvement with Austin. The court made the following relevant findings, by clear and convincing evidence, regarding the respondent. "The respondent . . . is twenty-four years old . . . . Her medical records indicate that she was previously diagnosed with major depressive disorder . . . post-traumatic stress syndrome . . . [and] bipolar disorder and was hospitalized at Yale New Haven Hospital five years earlier due to a suicide attempt. When asked, the respondent . . . denies any diagnosis other than depression. . . .

"The respondent . . . has a history of involvement with the criminal justice system . . . . During that time, she had pending criminal charges, including disorderly conduct, risk of injury to a child, larceny, criminal trespass, interfering with/resisting an officer and violation of a protective order. . . . On April 24, 2024, the respondent . . . was charged with violation of a protective order against the paternal grandmother. At the time of trial, she still had a pending criminal case. The respondent . . . has continued to be involved in the criminal justice system and has been the subject of additional arrests and charges . . . .

"The respondent . . . did not have stable housing and reported that she was either homeless, or living with friends, and would not provide [the department] with any information specifying where she was living. In July, 2024, she provided [the department] with an address of her temporary residence. She subsequently obtained housing in a shelter and testified that she obtained employment as an advocate for youth at the

housing collective. However, no evidence was presented [at trial] that confirmed her employment. . . .

"[The department] initially requested releases for the respondent . . . to sign, so that the department could give referrals for services and other treatments, but the respondent . . . refused to sign the releases. On May 2, 2023, [the department] referred her to Parenting Support Services (PSS); however, she declined the service. [The department] attempted to refer the respondent . . . for a substance abuse/mental health evaluation, however, she declined that referral as well. In April, 2023, the respondent . . . was ordered by the criminal court to engage in a substance abuse program. On May 8, 2023, she began services with Project Reward to address her substance abuse issues. She engaged in an intensive outpatient program (IOP) with Project Reward. The program further recommended that she attend a psychiatric evaluation for medication, but she declined. She was incarcerated [from] July [until October, 2023].

"In January, 2024, the respondent . . . completed her intake at parenting education with St. Joseph's [Parenting Center (St. Joseph's)] and subsequently completed that program. . . . In April, 2024, she eventually signed a release that allowed [the department] to communicate with St. Vincent's. The respondent . . . reported that she completed the IOP for mental health at St. Vincent's. Despite its requests, [the department] never received any medical records regarding the treatment from the provider or from the respondent . . . .

"The relationship between the respondent parents has been very contentious. There was previously a full no contact protective order in place between them. Despite the binding protective order, however, they continued to communicate . . . . [The department]

had concerns regarding the [respondent's] . . . parenting, mental health, substance abuse of cocaine and marijuana, and her homelessness. The respondent . . . has not kept [the department] informed of her whereabouts and residence. [The department] attempted to refer her to a substance abuse/mental health evaluation, but she declined. She also refused to sign releases that would enable [the department] to make referrals for other supportive services. [The department] offered the respondent . . . weekly supervised visitation at its Norwalk office. Her visit times were changed to accommodate her schedule and were then supervised by Shattering Glass Ceilings. Nevertheless, she continued to miss visits. Most recently, the respondent . . . has done well in attending visits.

"During the pendency of this matter, the respondent . . . has not gained any insight as to how her untreated mental health has impacted her ability to parent and take care of her son. Furthermore, she has not made any significant progress in making her mental health a priority, as evidenced by her continuous refusal to sign releases or participate in the limited referrals that she received."

In light of the foregoing findings, the court concluded that the petitioner had demonstrated by clear and convincing evidence that the department made reasonable efforts to reunify the respondent with Austin and that the respondent was unable or unwilling to benefit from the reunification efforts. The court found that the respondent's "situation has not improved since the child's removal" and, "[b]ased on her issues of mental health, substance abuse, and failure to benefit from counseling services, the respondent . . . will never be consistently available to her child." The court therefore found that it was in Austin's best interest to terminate

the respondent's parental rights.[3] This appeal followed. Additional facts and procedural history will be set forth as necessary.

The respondent claims that the court erred in finding that the department made reasonable efforts to reunify her with Austin. The respondent argues that the department "did not offer the specific services required by the respondent in order to facilitate reunification . . . ." The respondent further argues that the department's reunification efforts were more limited than the court concluded and that the petitioner rushed her case, thereby not making referrals for essential services.[4] We are not persuaded.

"Section 17a-112 (j) (1) requires that before terminating parental rights, the court must find by clear and convincing evidence that the department has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate . . . . Thus, the department may meet its burden concerning reunification in one of three ways: (1) by showing that it made

___

[3] The respondent also filed a motion for permanent transfer of custody and guardianship to the maternal grandmother. The respondent does not appeal from the court's denial of that motion.

[4] The respondent also claims that General Statutes §§ 17a-111b and 17a-112 (j), as applied, violate the equal protection clauses of the federal and state constitutions. She argues that "the statutory interplay" between the statutes "allows for an impermissible end run around the clear and convincing evidentiary standard required, as a matter of due process, in all termination hearings." The respondent's counsel recognized, however, that "this court properly did not reach this claim in previous appeals and should not reach it in this appeal." See *In re Jadiel B.*, 228 Conn. App. 290, 295–96 n.6, 324 A.3d 211 (declining to review identical constitutional challenge because court expressly found, on basis of clear and convincing evidence, that respondent was unwilling or unable to benefit from reunification efforts), cert. denied, 350 Conn. 921, 325 A.3d 217 (2024).

such efforts, (2) by showing that the parent was unable or unwilling to benefit from reunification efforts or (3) by a previous judicial determination that such efforts were not appropriate. . . . [I]n determining whether the department has made reasonable efforts to reunify a parent and a child . . . the court is required in the adjudicatory phase to make its assessment on the basis of events preceding the date on which the termination petition was filed. . . . This court has consistently held that the court, [w]hen making its reasonable efforts determination . . . is limited to considering only those facts preceding the filing of the termination petition or the most recent amendment to the petition . . . .

"The reasonableness of the department's efforts must be assessed in the context of each case. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . [R]easonableness is an objective standard . . . and whether reasonable efforts have been proven depends on the careful consideration of the circumstances of each individual case. . . .

"Our review of the court's reasonable efforts determination is subject to the evidentiary sufficiency standard of review . . . that is, whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . In so doing, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court and will not disturb the court's subordinate factual findings unless they are clearly erroneous." (Citations omitted; internal

quotation marks omitted.) *In re Kylie P.*, 218 Conn. App. 85, 95–96, 291 A.3d 158, cert. denied, 346 Conn. 926, 295 A.3d 419 (2023).

Here, the court reasonably could have concluded, on the basis of the evidence presented at trial, that the department made reasonable efforts to reunify the respondent with Austin. First, the department provided the respondent with supervised visitation and therapeutic family time. On multiple occasions from November, 2022, to April, 2023, the department requested that the respondent sign releases of information. When she did sign releases, the department referred the respondent to supervised visitation with Austin at the department's offices. The department adjusted visitation times to accommodate the respondent's schedule. She frequently missed visits. During the respondent's period of incarceration, from July to October, 2023, the department offered visitation to the respondent, but she declined it. Upon the respondent's release, the department continued to provide visitation. The department later made a referral to Shattering Glass Ceilings to supervise visits with Austin, but the respondent continued to miss visits. The department engaged the respondent in visitation through the time of trial.

The department also provided the respondent with referrals for parenting education. On May 2, 2023, after the respondent signed the necessary releases, the department referred her to PSS. PSS contacted the respondent, but she declined the service. In January, 2024, the department again encouraged the respondent to engage in parenting services. The respondent began a program with St. Joseph's in February, 2024, and the department continued to monitor her progress.

The department also made reasonable efforts to engage the respondent in mental health and substance abuse treatments. The department encouraged the

respondent to engage in its mental health and substance abuse programming, including by referring her for an evaluation. It also requested that the respondent sign releases for referrals and for communicating with existing providers, such as St. Vincent's, where she had been hospitalized for psychiatric treatment following Austin's birth. The respondent eventually signed a release, after the termination petition had been filed, allowing the department to communicate with St. Vincent's and claimed that she had completed an IOP for mental health there, but the department never received any medical records regarding this treatment. In the few other instances that she did provide the department with the necessary releases and information, the department collaborated with those service providers. For example, it monitored the respondent's progress at Project Reward and encouraged her to fully engage in the program's recommended psychiatric evaluation. The respondent declined that evaluation.

Despite the foregoing recitation of the reunification efforts undertaken by the department, the respondent contends that the department's efforts were unreasonable, in that the department "did not refer the respondent to substance abuse treatment, mental health treatment, or counseling surrounding interpersonal violence." The respondent's argument is belied by the record. Moreover, it ignores the principle that the department must make a reasonable effort to reunify, not every possible effort. See, e.g., *In re Kylie P.*, supra, 218 Conn. App. 96.

Furthermore, the court found, and the record reflects, that, despite the respondent's purported commitment to engage with the department, she repeatedly refused to do so. The respondent refused to inform the department "of her whereabouts and residence. . . . She also refused to sign releases that would enable [the department] to make referrals for other supportive services."

She likewise declined to engage in recommended services, like PSS, a psychiatric evaluation, and a substance abuse and mental health evaluation with the department.

This court has observed that "releases not only permit the department in the referral process to share confidential information to service providers appropriate to the parenting needs of the respondents, the ongoing communication that releases permit between the department and providers allows the department not only to monitor progress but to assess and adjust services as circumstances require." *In re Deboras S.*, 220 Conn. App. 1, 25, 296 A.3d 842 (2023). "[A] respondent's failure to sign releases authorizing the department to give or to receive information about her treatment [makes] it impossible for the department to procure rehabilitative services." (Internal quotation marks omitted.) Id., 24. Furthermore, "the department is not required to continue to provide reasonable efforts to a parent when the parent refuses to participate or engage in any of those efforts." *In re Kyara H.*, 147 Conn. App. 855, 873, 83 A.3d 1264, cert. denied, 311 Conn. 923, 86 A.3d 468 (2014). Although the defendant offered the respondent many resources in furtherance of her reunification with Austin, its efforts were hindered by the respondent's refusal to sign releases that would allow the department to communicate with existing providers and to make referrals for specific services.[5] Thus, the

---

[5] For example, the respondent contends that the lack of a specific IPV referral undermined the court's reasonable efforts determination. The respondent concedes that the department deferred a referral for IPV until she completed mental health and substance abuse treatment. The respondent does not claim that the treatment plan was unreasonable. Rather, she argues that she met those prerequisites, but the department failed to credit her for programs she engaged in externally to the department, such as Project Reward and St. Vincent's. The court explicitly found, however, and the record supports, that the respondent "made minimal progress addressing her mental health and substance abuse issues" and never completed substance abuse treatment. Thus, as the petitioner aptly asserts, "[t]he opportunity to make an IPV referral . . . never presented itself."

respondent's characterization of the department's efforts as "limited" or in "haste" is misplaced.

For the foregoing reasons, we reject the respondent's claim that the court erred in determining that the department made reasonable efforts to reunify her with Austin.[6] Accordingly, the respondent's challenge to the termination of her parental rights fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

To the extent that the respondent is referencing programming and treatments she engaged in or signed referrals for after the petition for termination of parental rights was filed, the court was "limited to making its assessment on the basis of facts preceding the filing of the petition for termination of parental rights . . . ." *In re Cameron W.*, 194 Conn. App. 633, 645–46, 221 A.3d 885 (2019), cert. denied, 334 Conn. 918, 222 A.3d 103 (2020). For example, she did not sign a release allowing the department to communicate with St. Vincent's until April, 2024, the month after the petition was filed. Thus, the court could not credit her participation in those services.

[6] The respondent argues that, "[b]ecause there was a permanency plan hearing where the trial court approved a permanency plan other than reunification, it would seem that any challenge to the trial court's decision regarding reasonable efforts would result in a mootness problem for the respondent . . . [in that] [t]his court, even if it agreed that the trial court erred in determining that the department made reasonable efforts to reunify, would be unable to afford the respondent relief . . . ." Because we conclude that the trial court did not err in finding that the petitioner made reasonable efforts to reunify the respondent with Austin, we need not address this argument.